IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL HOLT and : 4:15-CV-01728
CASEY HOLT :
:
      Plaintiffs, :
v. :
:
LOWE'S HOME CENTERS, LLC, :
: (Judge Brann)
    Defendant.

**MEMORANDUM**
February 10, 2016

Pending before this Court is a motion to dismiss for failure to state a claim upon which relief could be granted[1] filed by Defendant Lowe's Home Centers, LLC (hereinafter "Lowe's").[2] Lowe's seeks to dismiss the complaint filed by Plaintiffs Michael Holt and Casey Holt (collectively "the Plaintiffs")[3] in its entirety or, alternatively, to dismiss the punitive damages claim. The motion has been fully briefed and is ripe for disposition. Because the Plaintiffs have failed to plausibly state a claim that entitles them to relief, Lowe's motion to dismiss is granted.

## I. BACKGROUND

This action is the result of a tragic incident. Mr. Holt was employed by Extreme Concepts to supervise and manage a crew contracted to repair and replace

---

[1] ECF No. 13.
[2] Lowe's Home Centers, LLC was improperly named as Lowe's Companies, Inc. in the complaint.
[3] ECF No. 1, Exhibit A.

greenhouse buildings and provide snow removal services at Lowe's stores nationwide.[4]

Following a snow storm, the Lowe's store in Montoursville, Pennsylvania contracted with Rough Brothers Inc., a corporation that specializes in designing, manufacturing, and constructing greenhouses, to provide emergency snow removal services to remove nearly twelve to eighteen inches of snow that had accumulated on the roof of its greenhouse.[5] Lowe's also requested that the snow removal team survey the roof for damage, replace damaged panels, and secure any "structural damage" that the roof may have sustained.[6] Rough Brothers Inc., in turn, subcontracted with Extreme Concepts, who instructed Mr. Holt and his crew to report to the Montoursville Lowe's and provide the requested services.[7]

As he shoveled and raked snow from the roof of the greenhouse, Mr. Holt stood on a steel drainage channel adjacent to the greenhouse roof.[8] Mr. Holt slipped on ice and fell onto and through a greenhouse roof panel, landing fifteen feet below on the concrete floor.[9] As a result of the fall, Mr. Holt suffered serious injuries, including bone fractures, a spinal cord injury, a head injury, hearing loss, paralysis, and permanent paraplegia.[10]

---

[4] ECF No. 1, Exhibit A at ¶¶ 10, 13.
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶ 25.
[7] *Id.* at ¶¶ 10, 17.
[8] *Id.* at ¶¶ 30-32.
[9] *Id.* at ¶ 32.
[10] *Id.* at 57.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[11] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[12] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[13]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[14] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[15] More specifically, the Court in these

---

[11] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[12] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[13] *Neitzke*, 490 U.S. at 327.

[14] Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).

[15] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.

two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[16]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[19] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[20]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent

---

[16] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[17] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

[18] *Iqbal*, 556 U.S. at 678.

[19] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[20] *Twombly*, 550 U.S. at 556.

[21] *Iqbal*, 556 U.S. at 679.

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[22]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[23] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[24] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[25] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[26]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[27]

---

[22] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[23] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[24] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[25] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[26] *Iqbal*, 556 U.S. at 678.

[27] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

## III. DISCUSSION

The Plaintiffs allege three counts against Lowe's: Count I: Negligence pursuant to Restatement (Second) of Torts §§ 413, 416, and 427; Count II: Ordinary Negligence; and Count III: Loss of Consortium. In its motion to dismiss, Lowes argues that the Plaintiffs have failed to state a claim upon which relief can be granted and seeks the dismissal of the complaint in its entirety or, in the alternative, dismissal of the punitive damages claim.[28] The Court will examine Counts I and II[29] through the lens of ordinary negligence.

In Count I of their complaint, Plaintiffs argue that, as a business invitee, Lowe's owed Mr. Holt "the highest duty of care owed to any entrant upon the land, to protect him against both know(*sic*) dangers and against those which might be discovered with reasonable care."[30] Plaintiffs contend that Lowe's knew, or could have discovered had it exercised reasonable care, that the deteriorating greenhouse roof panels would pose an unreasonable risk of harm to Mr. Holt.[31] Lowe's, Plaintiffs argue, had a duty to keep its roof safe and to otherwise take reasonable measures to ensure precautions were taken to address the danger.[32]

To establish a claim for negligence in Pennsylvania, a plaintiff must establish

---

[28] ECF No. 14.
[29] The Court will not consider Count III for loss of consortium, as it is dependent on Counts I and II to survive.
[30] ECF No. 1 at ¶ 68.
[31] *Id.* at ¶ 69.
[32] *Id.* at ¶ 70.

(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.[33]

As there is no question that Mr. Holt suffered harm, the Court will begin its analysis by determining whether Lowe's had a duty to Mr. Holt and whether Lowe's appropriately discharged its duty under the applicable standard of care.

## Lowe's Motion to Dismiss Must Be Granted Because Lowe's Discharged Its Duty to Plaintiffs

### A. Duty: Premises Liability

In premises liability cases, the applicable standard of care depends on whether the injured plaintiff is categorized as an invitee, a licensee, or trespasser on the property where he was injured.[34] Business visitors, defined as those "invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land," are categorized as invitees.[35] A possessor of land generally has the duty to either "use reasonable care to make the premises safe for [those] invited to use the premises for business purposes" or "to

---

[33] *Vanchure v. Wegmans Food Markets, Inc.*, 2014 WL 1746844, *4 (M.D. Pa. May 1, 2014) (Caputo, J.) (*citing Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005)).

[34] *Vanchure*, 2014 WL 1746844 at *4 (*citing Davies v. McDowell Nat'l Bank*, 180 A.2d 21 (1962).

[35] Rest. Second of Torts § 332.

give them adequate and timely warning of dangers known to him but unknown to the business invitees."[36]

In the matter at hand, Lowe's contracted with Rough Brothers Inc., who in turn, contracted with Extreme Concepts, Mr. Holt's employer. With their complaint, Plaintiffs submit the "Rough Brothers Report," or the contract (hereinafter "the Contract") between Rough Brothers Inc. and Extreme Concepts.[37] Page 2 of the Contract provides that Rough Brothers Inc. assigned a contractor, Extreme Concepts, to "Lowe's Montoursville, PA #0356."[38] Under "Description of work to be performed," the following instructions appear:

> EMERGENCY. Store is reporting that snow removal is needed at this location. Bar base and Panels are deflecting. Survey entire garden center for all damage and remove snow if needed. Note how many panels were cut, and how many panels need replaced SEPARATELY. While at this store, if possible secure all hanging shade and any structure damage and make the store safe for customers and associates.[39]

According to the Contract, Extreme Concepts was hired to provide snow removal services. Rough Brothers Inc., in its contract with Extreme Concepts, indicated that Lowe's required snow removal services and had requested that Extreme Concepts, as noted above, "survey entire garden center for all damage" and further "secure all handing shade and any structure damage and make the store

---

[36] *Crane v. I.T.E. Circuit Breaker Co.*, 278 A.2d 362, 363 (Pa. 1971) (*citing Janowicz v. Crucible Steel Company of America*, 433 Pa. 304, 249 A.2d 773; Restatement (Second) of Torts § 343.)
[37] ECF No. 1, Exhibit A.
[38] *Id.*
[39] ECF No. 1, Exhibit A.

safe . . ."[40] Extreme Concepts was on notice that there was snow, and likely ice, on the premises and was assigned the task of surveying and repairing structural damage, leading to the conclusion that the workers may find structural damage. Accordingly, Lowe's appropriately discharged its duty to warn Mr. Holt of the possibility of snow and structural damage.

### B. Duty: Peculiar Risk Doctrine

While a property owner owes a duty to business invitees, as described above, it is well-established law in the Commonwealth of Pennsylvania that the owner of property that hires an independent contractor is not liable for physical harm caused to a person by an act or omission of the contractor or his servants.[41] The rationale behind this principle is that,

> "[w]hen an employer has exercised care in choosing a careful and competent contractor to do work on the employer's premises, and has entrusted the control and possession of the premises, and the performance of the task to that contractor, the employer is generally shielded from liability to third parties due to the negligence of the contractor."[42]

---

[40] *Id.*

[41] *Hader v. Coplay Cement Co.*, 189 A.2d 271 (Pa. 1963); *see also Poehmel v. Aqua America Pennsylvania, Inc.*, 2013 WL 27493, *2 (M.D. Pa. Jan. 2, 2013) (Mariani, J.) ("For over 100 years, the accepted and general rule regarding liability in our Commonwealth has been that a landowner who engages an independent contractor is not responsible for the acts or omissions of such independent contractor or his employees.")(*citing Beil v. Telesis Constr., Inc.*, 11 A.3d 456, 466 (Pa. 2011)), *McDonough v. U.S. Steel Corp.*, 324 A.2d 542, 545 (Pa. Super. Ct. 1974).

[42] *McDonough*, 324 A.2d at 545.

This thinking is in line with "the long-standing notion that one is not vicariously liable for the negligence of an independent contractor, because engaging an independent contractor 'implies that the contractor is independent in the manner of doing the work contracted for.'"[43]

There are, however, limited, narrowly construed[44] exceptions to this general rule.[45] One such rule, on which the Plaintiffs rely in their complaint, is the Peculiar Risk Doctrine, which is set forth in the Restatement (Second) of Torts §§ 416 and 427.[46]

Section 416:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a **peculiar risk** of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.[47]

---

[43] *Beil*, 11 A.3d at 466 (*citing Silveus v. Grossman,* 161 A. 362, 364 (1932)).

[44] *Olin v. George E. Logue, Inc.*, 119 F. Supp. 2d 464, 470 (M.D. Pa. 2000) (*citing Motter v. Meadows Ltd. P'ship,* 680 A.2d 887, 891 (Pa. Super. Ct. 1996)) (noting that because the Peculiar Risk Doctrine is an exception to the general rule of non-liability, it will be construed narrowly by the courts).

[45] Another frequently cited exception is the "retained control" exception. "One who entrusts work to an independent contractor, but who retains the control of any part of the work" may still be held liable for harm to others. *Poehmel v. Aqua America Pennsylvania, Inc.*, 2013 WL 27493, *2 (M.D. Pa. Jan. 2, 2013) (*citing* Restatement (Second) of Torts § 414). To retain control, it "is not enough that [the property owner] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Beil*, 11 A.3d at 460 (*citing* Restatement (Second) of Torts § 414 at cmt. c). A property owner can retain control by either retaining control over the "manner, method, and operative details of the work" in contract provisions or by exercising actual control over the work. *Poehmel*, 2013 WL 27493 at *2 (*citing Beil*, 11 A 3d at 467). Plaintiffs make no mention of this exception in their complaint and make no allegations that suggest to this Court that this exception would be applicable.

[46] Restatement (Second) of Torts §§ 416, 427; *see also Ortiz v. Ra-El Dev. Corp.*, 528 A.2d 1355, 1357 (Pa. Super. Ct. 1987).

[47] Restatement (Second) of Torts § 416 (emphasis added).

Section 427:

> One who employs an independent contractor to do work involving a
> **special danger** to others which the employer knows or has reason to
> know to be inherent in or normal to the work, or which he
> contemplates or has reason to contemplate when making the contract,
> is subject to liability for physical harm caused to such others by the
> contractor's failure to take reasonable precautions against such
> danger.[48]

In its precedential decision *Ortiz v. Ra-El Development Corporation,*[49] the

Superior Court of Pennsylvania "enunciated a precise definition" for the terms

"peculiar risk" in Section 416 and "special danger" in Section 427.  The *Ortiz* court

held that a "special danger" or "peculiar risk" exists where:

> 1) the risk is foreseeable to the employer of the independent contractor at
>    the time the contract is executed, i.e., a reasonable person, in the position
>    of the employer, would foresee the risk and recognize the need to take
>    special measures; and
>
> 2) the risk is different from the usual and ordinary risk associated with the
>    general type of work done, i.e., the specific project or task chosen by the
>    employer involves circumstances that are substantially out-of-the-
>    ordinary.[50]

Whether a risk is "peculiar" for the purposes of the Peculiar Risk Doctrine is

a "mixed question of law and fact which can be made, in clear cases, by the trial

---

[48] Restatement (Second) of Torts § 427 (emphasis added).
[49] 528 A.2d at 1357.
[50] *Ortiz*, 528 A.2d at 1358. This two-pronged test is hereinafter referred to as the *Ortiz* test.

judge as a matter of law."[51] The matter of whether the risk is "peculiar" should be decided by the court prior to submission to a jury.[52] If unclear, however, and reasonable minds might differ as to whether the risk is peculiar, the issue should be submitted to the jury.[53]

The Plaintiffs argue that a combination of conditions at the Montoursville Lowe's rendered the risk faced by Mr. Holt "peculiar" under the totality of the circumstances.[54] While they admit that, generally, "roofing work" is not considered unusually dangerous, four circumstances made the undertaking of this job an exception.[55]

First, according to the Plaintiffs, Lowe's typically uses polycarbonate panels in its greenhouse roofs.[56] The Montoursville Lowes, however, had atypical panels made of thin fiberglass or plastic, making this particular greenhouse roof less stable than other Lowe's greenhouses.[57] Second, Lowe's had knowledge that the greenhouse panels were deteriorated and needed repair.[58] Third, the panels were

---

[51] *Motter*, 680 A.2d at 891 (*citing Ortiz*, 528 A.2d at 1359 (internal citations omitted)). *See also McDonough v. U.S. Steel Corp.*, 324 A.2d 542, 546, n. 6 (Pa. 1974)("The distinction between 'ordinary risks' and 'peculiar risks' has been described as 'shadowy at best'. The definitions appearing in the Restatement provide general guidelines for making the distinction, and the illustrations give examples contrasting ordinary and peculiar risks . . . The determination is a mixed question of law and fact, and may, in clear cases, be made by the trial judge as a matter of law." (internal citations omitted)).

[52] *Olin*, 119 F. Supp. 2d at 470 (*citing Lorah v. Luppold Roofing Co., Inc.*, 622 A.2d 1383, 1386 (Pa. Super. Ct. 1993).

[53] *McDonough*, 324 A.2d at 546, n. 6 (where the circumstances were "such that reasonable minds might differ as to whether the risk was peculiar" and the issue was submitted to the jury)).

[54] ECF No. 15.

[55] *Id.* at 10.

[56] *Id.*

[57] *Id.*

[58] *Id.*

covered with twelve to eighteen inches of snow and ice.[59] Fourth, Mr. Holt was required to perform the work without the protection of safety anchors and a harness.[60]

In determining whether Lowe's had a duty to Mr. Holt under the Peculiar Risk Doctrine, this Court must apply the *Ortiz* test to the facts as pleaded by the Plaintiffs. The first prong of the test (determining whether the risk of harm was foreseeable to Lowe's at the time it hired Extreme Concepts for snow removal services) is an issue of fact to be decided by a jury. Whether this case will be presented to a jury, however, depends on the second prong of the *Ortiz* test: whether the risk Mr. Holt was faced with was "different from the usual and ordinary risk associated with the general type of work done."[61] Mr. Holt was hired to provide emergency snow removal services for the removal of snow on the roof of the greenhouse. The general type of work done in this case is removing snow from the roof of a greenhouse.

Various Pennsylvania courts have been faced with the application of the Peculiar Risk Doctrine to similar, if not identical, facts. In *Edwards v. Franklin & Marshall College*,[62] the plaintiff construction worker sustained serious injuries when he fell through a roof as he was patching a hole where a co-worker's foot had

---

[59] *Id.*
[60] *Id.*
[61] *Ortiz*, 528 A.2d at 1358. This two-pronged test is hereinafter referred to as the *Ortiz* test.
[62] 663 A.2d 187, 188 (Pa. Super. Ct. 1995).

gone through the roof. The court held that the plaintiff's employer was "in the business of constructing and reconstructing commercial structures" and that the danger of falling is apparent when engaged in that type of work. [63]

The plaintiff roofer in *Beil v. Telesis Construction, Inc.*,[64] slipped as he was ascending a vertically-mounted ladder in the rain. The Supreme Court of Pennsylvania held that the lower court properly found that the property owner was not liable under the Peculiar Risk Doctrine.[65] Similarly, the Court of Common Pleas of Bucks County held that no peculiar risk was presented when a worker slipped and fell after rain created a slick surface on the plywood of the steeply-pitched roof.[66]

In *Fedor v. Van Note-Harvey Associates*,[67] the United States District Court for the Eastern District of Pennsylvania, after applying Pennsylvania law, held that the Peculiar Risk Doctrine did not apply to a case where a worker slipped and fell off a roof when he was reaching for an object about to fall on a woman on the ground below.[68] The court held that it was not unexpected that a roofer might reach

---

[63] *Id.* at 191. In *Edwards*, the plaintiff's employer had also been informed of the dangerous condition of the roof and the plaintiff knew of the possibility of falling through it as he was injured while patching the roof after someone had already partially fallen through the same roof. Similarly, Extreme Concepts was instructed to search for and fix possible structural damage to the greenhouse. Regardless of the material of the greenhouse panels, Extreme Concepts was on notice of the risk that the snow storm could have damaged the structure of the greenhouse.
[64] 11 A.3d 456, 459 (Pa. 2011).
[65] *Id.*
[66] *Sieradzki v. Realen Homes Construction Co.*, 1997 WL 1133510 (Pa. Ct. Comm. Pl. June 3, 1997).
[67] 2011 WL 1085993 (E.D. Pa. March 18, 2011).
[68] *Id.* at *1.

out for an object to keep it from falling during a roof repair project.[69] It further held that what actually made the act "risky" was the failure to use adequate safety gear.[70]

The District Court for the Eastern District of Pennsylvania similarly found no peculiar risk when a construction worker stepped onto a mound of snow to avoid a dolly and slipped, sustaining a severe head injury.[71] Judge John Morgan Davis explained his reasoning as follows:

> . . . I cannot subscribe to the claim that the work in which the plaintiff was engaged presented a peculiar risk of harm simply because a finite contract deadline necessitated that the construction continue through the winter. To so hold would eviscerate the legal concept of independent contractor and detach Section 416 from its intended moorings . . . The precautions available to guard against the normal risks of working around icy surfaces are not novel. A single tarpaulin would have provided a safe haven for the plaintiff.[72]

Courts in other states with a climate similar to Pennsylvania have reached the same conclusion. The Supreme Court of Michigan held that the defendant had "no reason to foresee" that a contractor "would not take appropriate precautions in dealing with the open and obvious conditions of the construction site" when the plaintiff slipped and fell off of an icy roof in the course of his employment.[73] The court held that "[t]he mere presence of ice, snow, or frost on a sloped rooftop

---

[69] *Id.* at *3.
[70] *Id.*
[71] *Sharkey v. Airco, Inc.*, 522 F. Supp. 646, 655 (E.D. Pa. 1981).
[72] *Id.*
[73] *Perkoviq v. Delcor Homes-Lake Shore Pointe, Ltd.*, 643 N.W.2d 212, 217 (Mich. 2002).

generally does not create an unreasonably dangerous condition . . . that could reasonably be expected of possessors of land in Michigan . . ."[74]

Similarly, in *Sievers v. McClure*,[75] the plaintiff roofer fell to his death when he slipped on ice on a roof he was thawing with a propane torch. The Supreme Court of Alaska held that,

> [t]he risk of harm which [the plaintiff] encountered was the risk that all roofers routinely face—the danger of falling off a sloped roof during its construction or repair. The presence of ice on the roof does not make the risk a peculiar one, as there is nothing abnormal about ice in Alaska in November. Indeed, the risk of falling from a roofing surface made slippery by ice, rain, oil, or loose materials is a risk with which the roofer must be prepared to deal every day.[76]

Likewise, in the case at bar, there is nothing abnormal about encountering snow and ice in central Pennsylvania. In fact, encountering snow and ice on the roof of the greenhouse was not only expected, it was a necessary climatic condition in order for Mr. Holt to perform the type of work which he was hired to do. The risk that Mr. Holt could slip on ice is a risk he encounters every time he performs this type of work and is by no means peculiar. Thus, the risk Mr. Holt encountered was not "different from the usual and ordinary risk associated with the general type of work done,"[77] as is necessary to apply the Peculiar Risk Doctrine under the second prong of the *Ortiz* test.

---

[74] *Id.*
[75] 746 P.2d 885, 886 (Alaska 1987).
[76] *Id.* at 890.
[77] *Ortiz*, 528 A.2d at 1358.

16

C. *Duty: Restatement (Second) of Torts § 413*

Plaintiffs also seek relief in their complaint under Section 413 of the

Restatement (Second) of Torts. Section 413 varies from Sections 416 and 427,

discussed above, in that it imputes liability on the owner of property who hires a

contractor to do work which presents a peculiar risk and either fails to take

reasonable precautions or fails to shift the duty of care on the contractor itself.

Section 413 provides:

> One who employs an independent contractor to do work which the
> employer should recognize as likely to create, during its progress, a
> **peculiar unreasonable risk** of physical harm to others unless special
> precautions are taken, is subject to liability for physical harm caused
> to them by the absence of such precautions if the employer
>
> - (a) fails to provide in the contract that the contractor shall take such
>   precautions, or
>
> - (b) fails to exercise reasonable care to provide in some other manner
>   for the taking of such precautions.[78]

Comment *b* of Section 413 explains that the section is "concerned with

special risks, peculiar to the work to be done, and arising out of its character, or out

of the place where it is to be done, against which a reasonable man would

recognize the necessity of taking special precautions."[79] Comment *e* further

provides that "[t]he fact that the contract under which the work is done provides

---

[78] Restatement (Second) of Torts § 413 (emphasis added).
[79] *Id.* at cm. *b*.

that the contractor shall take the necessary special precautions does not necessarily relieve the employer from liability, since he may be liable under the rule stated in § 416."[80]

Lowe's contends that the application of Section 413 is precluded in this case because, in contracting with Rough Brothers Inc., Extreme Concepts absorbed the duty to take the necessary precautions. On Page 2 of the contract between Rough Brothers Inc. and Extreme Concepts,[81] submitted by Plaintiffs, the following provisions appear:

1. Contractors will follow all safety guidelines required by OSHA and Rough Brothers, it is the requirement of the contractor to be aware of all safety standards and to provide all necessary equipment to assure the safety of the jobsite at all times.

2. A site survey will be performed on entire store. Any other damage or problems to: garden center structure, mechanical systems, glazing system, polycarbonate, shade fabric, retractable shade system components, hoop covers and their components, moon ends or any part of any type structure not mentioned here should be indicated on the Rough Brothers survey form.
. . .

5. The Terms & Conditions of Rough Brothers' Master Subcontract constitute a part of this Project Subcontract and take precedence should conflicts or discrepancies arise.[82]

The Master Subcontract (hereinafter "the Subcontract") follows.

---

[80] *Id.* at cm. e.
[81] ECF No. 1, Exhibit A.
[82] *Id.*

18

According to the Subcontract, Extreme Concepts was "responsible for continuous inspection of [its] work to assure its safety."[83] Extreme Concepts was also to "require and be responsible for safety compliance on the part of its agents" and "review all job conditions and thoroughly inspect all prior work of Rough Brothers, Inc. and others" prior to commencing work.[84]

The Subcontract further specified that if any unacceptable conditions were found, Extreme Concepts was to provide written notice to Rough Brothers, Inc.[85] If no notice was provided, Extreme Concepts was deemed "to have fully accepted the conditions" and would be "fully responsible for any and all expenses, losses or damages resulting from said conditions."[86] Extreme Concepts was to "take all reasonable safety precautions with respect to its work . . . [and] comply with all safety measures required by the General Contract Documents and with all applicable laws, ordinances, rules, regulations and order of any public authority for the safety of persons or property . . ."[87]

The Plaintiffs argue that these provisions did not show that Lowe's contracted for any special precautions to be taken for emergency snow removal. According to Section 413 of Restatement (Second), however, special precautions are only required when there exists a "peculiar unreasonable risk of physical harm"

---

[83] ECF No. 1-1 at § 8.3.
[84] *Id.* at § 8.18.
[85] *Id.*
[86] *Id.*
[87] *Id.* at § 8.20.

that is a "special danger . . . arising out of the particular situation."[88] As this Court has found no peculiar risk, Plaintiffs' claim under Section 413 of the Restatement (Second) of Torts must be dismissed.

**Lowe's Motion to Dismiss Must Be Granted Because Causation for Plaintiffs Injuries is Not Attributable to Lowe's**

Under a claim of ordinary negligence, a court must also find a causal connection between the breach of duty and the resulting injury.[89] Plaintiffs aver in their complaint, and further explain in their brief in opposition to Lowe's motion to dismiss, that Mr. Holt slipped on ice while he was standing on the drainage channel adjacent to the roof. Plaintiffs argue that Lowe's, in breaking down each of the contributing circumstances to Mr. Holt's fall, ignores that it was "the totality of the specific circumstances" that caused this regrettable accident.[90]

The type or condition of the panels on the roof of this particular greenhouse, however, does not change the outcome of this case. It was the slip on the ice, not the condition of the panels on the roof, which was the cause of the accident. Had Mr. Holt been positioned closer to the edge of the roof, slipped on ice, and fallen

---

[88] Restatement (Second) of Torts § 413, § 413 cmt. *b*.
[89] *Vanchure v. Wegmans Food Markets, Inc.*, 2014 WL 1746844, *4 (M.D. Pa. May 1, 2014) (*citing Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005)).
[90] ECF No. 15 at 12.

over the edge and not on top of the panel of the greenhouse, Mr. Holt would have,

presumably, suffered the same unfortunate fate.[91]

It seems evident that the use of appropriate safety gear could have prevented

this horrific accident. The Holt's initial complaint alleged multiple times that "Mr.

Holt and his team were prohibited from securing themselves to the roofline with

standard safety anchors and harnesses."[92] None of the allegations, however, clearly

stated *who* prohibited Mr. Holt from using the safety gear. In the brief in

opposition to Lowe's motion to dismiss, however, the Plaintiffs state that Extreme

Concepts, Mr. Holt's employer, sent him onto the roof without proper safety gear

and that Lowe's should be held vicariously liable for Extreme Concepts outrageous

conduct.[93]

This Court cannot find that the Peculiar Risk Doctrine applies based on "the

violation of safety conditions alone."[94] This is because "many, if not most,

industrial actions result from a failure to follow the safety regulations of either the

state or the federal government."[95]

---

[91] Additionally, in contracting for the services with Rough Brothers Inc., Lowe's requested that the subcontractor "[s]urvey the entire garden center for all damage" and [n]ote how many panels were cut, and how many panels need replac[ing]." ECF No. 1, Exhibit A at 2. Lowe's also asked them to "secure all hanging shade and any structure damage and make the store safe for customers and associates." *Id.* Extreme Concepts was, therefore, on notice that there could be damage to the roof, regardless of the material of which the roof was made.
[92] ECF No. 1, Exhibit A at ¶ 29; *see also* ECF No. 1, Exhibit A at ¶¶ 35, 39, 48b., 53, 66, 67, 71, 72.
[93] ECF No. 1, Exhibit A at § B.
[94] *Lorah*, 622 A.2d at 1386; *see also Olin*, 119 F. Supp. 2d at 471; *see also Motter*, 680 A.2d at 892.
[95] *Lorah*, 622 A.2d at 1386 (*citing Peffer v. Penn 21 Assoc.*, 594 A.2d 711, 713 (Pa. Super. Ct. 1991).

Moreover, the Subcontract between Rough Brothers and Extreme Concepts clearly states that Extreme Concepts will "take all reasonable safety precautions with respect to its work . . . [and] comply with all [required] safety measures . . ."[96] Extreme Concepts or Rough Brothers Inc. would be much better able than Lowe's "to make sure the work is performed at the safety level appropriate for the project."[97] This Court agrees with the Superior Court of Pennsylvania when it expressed:

> "[s]uffice it to say that we would find odd a doctrine of law that absolves an employer of an independent contractor from ordinary negligence on the part of the contractor or his servant, yet holds the same employer vicariously liable for either of those actors' gross negligence."[98]

Consequently, this Court finds that the cause of the harm in this case was the slip on ice and the lack of use of appropriate safety gear.

This Court recognizes that the above cited cases were decided on Rule 56 motions for summary judgment, after the parties engaged in discovery, unlike the instant case. Nevertheless, this Court must take all of the factual allegations in the Plaintiffs' complaint as true,[99] and decide, based on the facts presented, whether the Plaintiffs' compliant states a plausible claim for relief.[100]

---

[96] ECF No. 1-1 at § 8.20.
[97] *Lorah*, 622 A.2d at 1387.
[98] *Id.*
[99] *Hishon*, 467 U.S. at 73.
[100] *Twombly*, 550 U.S. at 561.

The facts as alleged, however, are clear. This Court is unable to find that a peculiar risk existed in this case or that Lowe's is liable in some fashion for the negligent actions of Extreme Concepts. Lowe's duty to Mr. Holt as its business invitee was discharged appropriately when it hired Extreme Concepts for snow removal services and requested that Extreme Concepts survey and repair any structural damage found. Extreme Concepts was in the best position to recognize the risk that its employees could slip on ice in the course of their snow removal work and ensure that safety regulations were being adhered to in order to protect from that risk.

## IV. CONCLUSION

In accordance with the foregoing analysis, Lowe's motion to dismiss[101] is granted and this case is dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[101] ECF No. 13.